1

2

3

4

5

6 UNITED STATES DISTRICT COURT

7 DISTRICT OF NEVADA

8 * * * * *

9 RIO PROPERTIES, INC., a Nevada                )
   corporation,                                            )          2:01-cv-0459-LRH-PAL
10                                                           )
                         Plaintiff,                          )          <u>ORDER</u>
11                                                           )
            v.                                               )
12                                                           )
   STEWART ANNOYANCES, LTD., et al.,      )
13                                                           )
                         Defendants.                      )
14 _____)

15        The following are currently pending before the court:

16        Plaintiff Rio Properties, Inc.'s ("Rio" or "Plaintiff") Motion for Attorneys' Fees and

17 Costs (#436[1]), filed March 22, 2006.  Defendants Stewart Annoyances, Ltd., et al. (collectively

18 "Defendants") have filed an Opposition (#441), and Plaintiff has filed a Reply (#448).

19        Plaintiff also submitted a Bill of Costs (#433), filed March 15, 2006.  Defendants have

20 filed objections (#439), but Plaintiff has not filed a response.

21 **I.  PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS**

22 **A. BACKGROUND**

23        In its motion for attorneys' fees, Plaintiff seeks an award of attorneys' fees in the amount

24 of $1,140.906.75 and an award of non-taxable costs in the amount of $174,266.58.  Excluded

25 from this application are sums otherwise previously awarded in the Court's orders of April 4,

26 2005 ($23,500.00) (#203) and March 3, 2006 ($153,483.70) (#427) and Plaintiff's requested

27 _____

28        [1] Refers to the court's docket number.

1   taxable costs of $90,773.63 (#433).

2       On March 23, 2001, Plaintiff filed suit against Defendants, seeking return of the $2

3   million Plaintiff prepaid for a concert Defendants did not perform on December 30, 2000.

4   Defendants denied liability.  They maintained that Mr. Stewart ("Stewart") was ill, that his illness

5   was a "force majeure" event under the parties' contract, and that, although he did not perform,

6   Defendants were contractually entitled to keep the money and reschedule the cancelled concert

7   (##6, 32).  On September 7, 2005, after trial, a jury found the parties "did not mutually consent to

8   the same material terms with respect to rescheduling and/or refund of the [$2 million] guaranteed

9   compensation."  The jury further found that Plaintiff should recover its $2 million, plus interest

10  from November 9, 2000, which the court thereafter set at 10% (#402).  The court entered its

11  declaratory judgment and judgment on the jury's verdict on March 3, 2006. (## 427, 428).

12      As part of their contract, the parties agreed that, in the event of litigation arising under

13  their agreement, the prevailing party would be entitled to recover its reasonable attorneys' fees

14  and costs.  The March 8, 1999, Agreement (the "March 1999 Agreement") between Plaintiff and

15  Defendants contained two provisions respecting the award of attorneys' fees.  These provisions

16  read as follows:

17          The prevailing party in any litigation arising under this letter agreement shall be
            entitled to be reimbursed for reasonably [sic] attorneys' fees and other costs and
18          expenses of said litigation.

19  (March 1999 Agreement ¶ D4.)

20
            In any action or proceeding to enforce the terms of this Agreement, the prevailing
21          Party shall be entitled to reasonable attorneys' fees and costs incurred, whether or
            not the action is reduced to judgment.
22
    (Id. ¶ D11.)
23
24      Plaintiff paid Defendants the $2 million that the jury ordered returned pursuant to the

25  January 6, 2000 Amendment (the "Amendment").  Paragraph 5 of the Amendment, "ratified and

    affirmed" the "terms of the existing agreement between the parties." ¶ 5.
26
27      The parties addressed the matter of pleading and proof of attorneys' fees in the joint

28                                              - 2 -

1   pretrial order and in open court on August 23, 2005.  They dispensed with presentation of proof

2   at trial respecting fees and costs and agreed to the presentation of applications therefor by  post-

3   judgment motion to the court:

4          Defendants argue that the individual contract provisions, including the choice-of-law and

5   attorneys' fees provisions, do not survive the jury's finding that no enforceable contract exists

6   between the parties.  Specifically, they aver that as the jury found that "the parties did not enter

7   into an enforceable contract because they did not mutually consent to the same material terms

8   with respect to rescheduling and/or refund of the guaranteed compensation," (Jury Verdict,

9   (#402)), it follows that the specific provisions of the contract are likewise not enforceable.  In

10  response, Plaintiff asserts that only the rescheduling and/or refund provisions of the contract were

11  found to be unenforceable and that the choice-of-law and attorneys' fees provisions remain in full

12  effect.

13                                        **B. DISCUSSION**

14                                   **1. Choice-of-Law Provision**

15         Paragraph D4 of the March 1999 Agreement states that the agreement "shall be governed

16  and interpreted by the laws of the State of California . . . ."  However, Defendants argue that a

17  valid contract never existed in this case, and, as a result, there is no basis upon which to claim

18  that the choice-of-law clause governs this dispute.  With respect to the choice-of-law provision in

19  the contract, this court has previously made the following ruling:

20         Nevada routinely honors choice-of-law provisions.  *See Engel v. Ernst*, 724 P.2d
           215, 216-217 (Nev. 1986).

21

22                 Despite the fact that Nevada routinely enforces choice-of-law provisions,
           Defendants claim that the choice-of-law provision in the parties' contract, which
           states that California law shall govern the parties' agreement, *see* March 1999
23         Agreement, ¶ D(4), is not applicable to pre-judgment interest because the jury
           found "that the parties did not enter into an enforceable contract."  As a result,
24         Defendants allege that the California choice-of-law clause in the March 1999
           Agreement is also unenforceable and that the court must apply Nevada's default
25         choice-of-law rules.  Unfortunately, Defendants do not provide any authority for
           the proposition that where a contract is unenforceable because of mistake
26         regarding a separate material clause, the choice-of-law provision is also
           unenforceable.

27

28                                              - 3 -

Plaintiffs argue that the choice-of-law provision in the parties' contract remains in force even though the jury found that the contract was unenforceable because the parties "did not mutually consent to the same material terms with respect to rescheduling and/or refund of the guaranteed compensation." Jury Verdict. They claim that the lack of mutual consent goes only to the refund/rescheduling obligation and not to choice-of-law agreement. As authority for their position, they cite to the Restatement (Second) of Conflict of Laws, which states:

> The fact that a contract was entered into by reason of misrepresentation, undue influence or mistake does not necessarily [mean] that a choice-of-law provision contained therein will be denied effect. This will only be done if the misrepresentation, undue influence or mistake was responsible for the complainant's adherence to the [choice-of-law] provision . . . . Otherwise, the choice-of-law provision will be given effect . . . .

Restatement (Second) of Conflict of Laws § 201 cmt. c (1971); s*ee also* § 187 cmt. b.

Unfortunately, Nevada has neither adopted or rejected the view set forth in the Restatement. In the absence of controlling precedent from the Nevada Supreme Court, this Court must use its own best judgement to predict how the state court would decide the relevant substantive issues. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *reh'g denied, modified*, 810 F.2d 1517 (9th Cir. 1987); *Takahashi v. Loomis Armored Car Service*, 625 F.2d 314, 316 (9th Cir. 1980); *Associated Aviation Underwriters, Inc. v. Vegas Jet, L.L.C.*, 106 F.Supp.2d 1051, 1053 (D.Nev. 2000). "In doing so, this Court may look to state court decisions from sister jurisdictions, treatises and other helpful resources." *Vegas Jet*, 106 F.Supp.2d at 1053.

As Plaintiff points out, the Ninth Circuit has previously stated that § 201 of the Restatement provides "the traditional view" as to the enforceability of a choice-of-law provision where the contract is otherwise invalid. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 641 (9th Cir. 1988). In that same case, the court assumed that Washington, which had not decided the issue, would accept the traditional view as stated in the Restatement. *Id*. Specifically, the court found that Washington courts would enforce a choice-of-law provision in a contract unless that clause itself was obtained by a misrepresentation. *Id*. Thus, when the United States District Court for the District of Arizona had to decide how a Nevada court would rule on § 201, it applied the *Sparling* analysis and held that "[l]ike the Ninth Circuit did in *Sparling*, this Court assumes that the courts of Nevada would adopt 'the traditional view.'" *Southern Union Co. v. Southwest Gas Corp*., 165 F. Supp. 2d 1010, 1027-1028 (D.Ariz. 2001).

The court agrees with the analysis in *Sparling* and *Southern Union*, and it finds that the Nevada Supreme Court would adopt the "traditional view" as described in § 201 of the Restatement of Conflicts (Second). The court's decision is further bolstered by the fact that both parties have relied on California law throughout the pendency of this case, including in drafting the jury instructions and verdict forms, and this is the first suggestion made by Defendants that Nevada law should apply to the contract.

- 4 -

1   (March 3, 2006, Order (#427)).

2        Defendants fail to point out that the court has already ruled that Nevada, as the forum

3   state, would give effect to the parties' contractual choice of California law.  (March 3, 2006,

4   Order (#427) at 2:13-4:22.  To now find that no provisions of the contract are enforceable and

5   that Nevada law applies would be inconsistent with the court's prior holding.  In essence,

6   Defendants are seeking a reconsideration of the court's previous order without specifically

7   making such a request.

8        Plaintiff argues that Defendants are precluded from rearguing the enforceability of the

9   choice-of-law provision at this juncture.  However, on the basis of the following discussion and

10  in the interest of justice, the court will consider Defendants' new arguments.  As they did in the

11  motions addressed in the court's March 3, 2006, Order, Defendants argue that because the jury

12  found that "the parties did not enter into an enforceable contract because they did not mutually

13  consent to the same material terms with respect to rescheduling and/or refund of the guaranteed

14  compensation," (Jury Verdict, (#402)), "[t]he ultimate – and only rational – conclusion from the

15  jury's verdict is that the specific provisions of the contract are likewise not enforceable."  (Defs.'

16  Opp'n (#441) at 3:16-20.)

17       Plaintiff, in response, argues that the law supports enforcing the attorneys' fees provisions

18  even though the refund/rescheduling portion of the contract was found to be invalid for reasons

19  of lack of mutual consent and/or mistake.  Defendants dispute this characterization, however.

20  They argue that the jury's finding of no enforceable contract meant that "no contract was ever

21  formed." (*Id.* at 4:3.)

22       Defendants now argue that Plaintiff's reliance on the Restatement (Second) of Conflict of

23  Laws, section 201, is misplaced because this is not a case of mistake.  Section 201, comment c,

24  provides:

25       The fact that a contract was entered into by reason of misrepresentation, undue
         influence or mistake does not necessarily [mean] that a choice-of-law provision
26       contained therein will be denied effect.  This will only be done if the
         misrepresentation, undue influence or mistake was responsible for the

27

28                                              - 5 -

1    complainant's adherence to the [choice-of-law] provision . . . .  Otherwise, the
2    choice-of-law provision will be given effect . . . .

Restatement (Second) of Conflict of Laws § 201 cmt. c (1971); s*ee also* § 187 cmt. b.

Defendants assert that the jury found there was no mutual consent on the material terms.  For the

first time, they also claim that this is not a case in which the consent was not freely obtained by

reason of misrepresentation, undue influence, or mistake.  Accordingly, they argue the

Restatement is inapplicable to the present situation.

Unfortunately, Defendants failed to make this argument prior to the court's March 3,

2006, Order, in which the court, also relying upon the Restatement, found that Nevada law

supports a finding that the choice-of-law provision should be given effect.  Indeed, previously,

Defendants were silent regarding Plaintiff's reliance on the Restatement, and they did not seek to

have the court reconsider the issue following the court's order.  In its March 3, 2006, Order, the

court specifically relied upon the presence of mistake in making its finding that the choice-of-law

provision in the Agreement remained valid.

Defendants now reargue the issue of whether the choice-of-law provision in the

Agreement is enforceable.  Plaintiffs seek to enforce the choice-of-law and attorneys' fees

provisions.  Under Plaintiff's interpretation, California law should apply to any disputes arising

under the contract, and under California law, Plaintiffs are entitled to their attorneys' fees.

"The rule in this circuit requires that federal courts in diversity actions apply state law

with regard to the allowance (or disallowance) of attorneys' fees." *Diamond v. John Martin Co.*,

753 F.2d 1465, 1467 (9th Cir. 1985).  Plaintiff's argue that the attorneys' fees provision is

governed by California law.  They base this assertion on the fact that the March 1999 Agreement

contains a California choice-of-law clause, (*see* March 1999 Agreement, ¶ D4.)  Defendants

argue that California law is completely inapplicable to their dispute regarding attorneys' fees

because the lack of mutual assent makes the contract unenforceable in every respect.  They now

aver that the unenforceability of the contract has nothing to do with mistake; instead, it is wholly

based on lack of mutual assent.

- 6 -

1   The confusion regarding mutual assent and mistake has arisen because mistake was

2   obviously at the heart of the jury's finding of lack of mutual assent.  When understood in its

3   conventional sense, the jury could certainly find that the parties were mutually mistaken, albeit in

4   different ways,  as to the meaning of the Agreement and that their "mistakes" led to a lack of

5   mutual assent between the parties.  The same cannot be said if mistake is understood as a legal

6   term.  It appears that in many instances, the parties have used "mistake" in both its common and

7   legal meaning, without differentiation.  As a result, in post-judgment motions, mistake and lack

8   of mutual assent have become conflated.

9   When mistake is understood as a legal term, it becomes clear that lack of mutual assent

10   and mistake are indeed distinct and mutually exclusive concepts.  In legal terms, mistake is

11   generally used with regard to the formation of contracts, and mistake is referred to in two ways:

12   mutual and unilateral.  To prove mutual mistake, a party must demonstrate that there was a

13   shared intention between the parties during contract formation, and there was a mutual but

14   mistaken belief by all parties that the written contract reflects that shared intention.  *National*

15   *Reserve Ins. Co. of Illinois v. Scudder*, 71 F.2d 884, 886 (9th Cir. 1934); *Truck Ins. Exch. v.*

16   *Wilshire Ins. Co.*, 8 Cal.App.3d 553, 559 (Cal.Ct.App. 1970).  The evidence before the jury did

17   not support a finding that the parties had a shared but mistaken belief regarding the

18   refund/rescheduling provisions of the contract.  Therefore, mutual mistake is inapplicable to the

19   present case.

20   To prove unilateral mistake, a plaintiff must show that: (1) there was a mutual intention

21   of the parties; (2) the written contract fails to reflect the true intention of the parties due to a

22   unilateral mistake; and (3) the defendant actually knew of or suspected the mistake at the time of

23   its drafting and execution.  Cal. Civ. Code § 3399; *La Mancha Dev. Corp v. Sheegog*, 78

24   Cal.App.3d 9, 16-17 (Cal.Ct.App. 1978).  A plaintiff must also show that the defendant unfairly

25   utilized the mistaken belief to take advantage of the plaintiff.  *Meyer v. Benko*, 55 Cal.App.3d

26   937, 944 (Cal.Ct.App. 1976).  Again, the evidence before the jury would not support a finding of

27

28   - 7 -

1   any of the elements required to find unilateral mistake.  Consequently, unilateral mistake is also

2   inapplicable to this case.

3           Therefore, Defendants are correct that this is not a case of mistake, and any analysis that

4   relies upon mistake as a basis for enforcing the choice-of-law provision is flawed.  Therefore, the

5   question before the court is whether, where a contract is unenforceable because of lack of mutual

6   assent, its choice-of-law provision may still be enforced.

7           A federal court sitting in diversity jurisdiction applies the forum state's choice-of-law

8   rules.  *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000); *Northern Ins. Co. of N.Y. v.*

9   *Allied Mut. Ins. Co.*, 955 F.2d 1353, 1359 (9th Cir. 1992).  Therefore, the court will apply

10  Nevada's choice-of-law rules in deciding whether or not the California choice-of-law clause

11  should be enforced.  Nevada routinely honors choice-of-law provisions.  *See Engel v. Ernst*, 724

12  P.2d 215, 216-17 (Nev. 1986).

13          Defendants argue that a distinction exists between contracts which may be rescinded and

14  are therefore unenforceable and contracts which are unenforceable because the contract was

15  never properly formed.  To support this proposition, Defendants rely upon *Chakmak v. H.J.*

16  *Lucas Masonry, Inc.*, 55 Cal.App.3d 124, 127 Cal.Rptr. 404, 407 (Ct.App.5th 1976).  In that

17  case, the court made the following statement:

18              When concerned with the essential elements of consent a careful distinction must
                be made between a consent that is not free because it was obtained by duress,
19              menace, fraud, undue influence or mistake ([Cal] Civ. Code §§ 1565, 1567) and a
                consent that is not mutual because the parties did not agree upon the same thing in
20              the same sense ([Cal] Civ. Code §§ 1565, 1580).  (*See* 1 Williston on Contracts
                (3d ed. 1957) § 20, pp. 35-36.)  In the situation where the consent is not free the
21              contract is not absolutely void, but may be rescinded by the parties.  ([Cal] Civ.
                Code § 1566.)  In the situation where the consent is not mutual, it generally is
22              stated there is no contract.

23  55 Cal.App.3d at 129.  *See also Meyer v. Benko*, 55 Cal.App.3d 937, 942 (Cal.Ct.App. 1976)

24  ("California law requires mutual assent of the parties to form a valid contract); *D'Angelo v.*

25  *Gardner*, 819 P.2d 206, 232 (Nev. 1991) ("[C]ontracts are created by mutual assent."); *Miller v.*

26  *Thompson*, 160 P. 775, 780 (Nev. 1916) (finding contract unenforceable where mistake led to

27

28                                                  - 8 -

1   lack of mutual assent).

2          In other words, a distinction is to be drawn between contracts that are void because they

3   were never actually formed and those that were formed, but because of a legal fiction, they

4   become unenforceable, or voidable.  *See* 1 Richard A. Lord, *Williston on Contracts* § 1:20 (4th

5   ed. 2006).  Defendants argue that where a contract is void for lack of formation, no part of that

6   contract may be enforced because there was no meeting of the minds on the essential elements of

7   the contract.  *See Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955, 956 (Nev. 1978) (stating that

8   contracts require a meeting of the minds as to all essential elements).

9          In response, Plaintiff first argues that the issue has already been decided by the court, and

10  Defendants do not have the ability to now challenge the court's previous order as part of the

11  current motion.  For the most part, Plaintiff continues to argue as if this is an issue of mutual

12  mistake rather than an issue of lack of mutual assent.

13         However, in a footnote (*see* Pl.'s Reply (#448) at 15 n. 6,) Plaintiff does argue that

14  Defendant's argument that the contract in this instance is void, rather than voidable, is wrong as a

15  matter of law.  Plaintiff claims that the *Chakmak* decision relied upon 1 *Williston on Contracts* §

16  20 (3d ed. 1957), and that the distinction between void and voidable contracts is no longer

17  supported in the current version of *Williston*.  They claim that *Williston* now makes "mutual

18  mistake" a subcategory of "no mutuality of assent."  The sections they cite to, however, do not

19  support that conclusion.  *See* 1 Richard A. Lord, *Williston on Contracts* § 1:20 (4th ed. 2006) and

20  27 *Williston on Contracts* § 70:14 (4th ed. 2006).  Indeed, the court can find nothing in those

21  sections that suggests that the previous distinction no longer exists.  On the contrary, § 1:20

22  specifically discusses the difference between void and voidable contracts.

23         Plaintiff also cites *Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1403 (9th

24  Cir. 1990) for the proposition that even where a contract is void, the attorneys' fees and choice of

25  law clauses should still be given effect.  In that case, after the parties had entered into a valid

26  contract, presumably meeting the requirement of mutual assent, the government promulgated

27

28                                              - 9 -

1   regulations which made performance of several of the contested contract provisions illegal.  The

2   Court, noting that the contract had become "void," stated that the choice-of-law provision was

3   still enforceable.  Although the Court used the term "void" to describe the contract, it is obvious

4   that there was no question that a valid contract had been entered into and that the contract had

5   actually become voidable as the result of subsequent government action.  Therefore, *Alaska*

6   *Airlines* is more akin to a case of mistake than to a case of lack of mutual assent.  As a result,

7   *Alaska Airlines* is not binding or helpful in deciding the issue before the court.

8        Defendants also look to the issue of the enforceability of arbitration clauses as analogous

9   to the enforceability of attorneys' fees provisions.  In *Prima Paint v. Flood & Conklin*, 388 U.S.

10  395, 402-4 (1967), the Supreme Court held that an arbitration clause is separable from the

11  contract even if a party seeks to rescind or avoid the contract due to fraud in the inducement

12  unless the fraud went to the arbitration clause itself.  The California Supreme Court, in *dicta*, has

13  recognized an exception to the *Prima Paint* ruling, however, based on the distinction between

14  voidable and void contracts:

15       The decisions [plaintiff] cites have a logical rationale: If a party can show that it
         did not know it was signing a contract, or that it did not enter into a contract at all,
16       both the contract and its arbitration clause are void for lack of mutual assent.

17  *Saint Agnes Medical Center v. PacifiCare of California*, 82 P.3d 727 (Cal. 2003) (citations

18  omitted) (finding that the exception did not apply because it was not a case where mutual assents

19  was lacking).  As Plaintiff correctly points out, *Saint Agnes* addressed arbitration clauses, not

20  choice-of-law provisions, and the statement was not necessary to the holding of the case.

21  However, the rationale behind its statement is well-reasoned, and the court finds the reasoning

22  applicable to the case at bar.

23       The court finds the distinction between voidable and void contracts to be controlling.

24  Where parties have failed to mutually assent to the same material terms, a contract never came

25  into existence and is therefore void.  The jury's verdict, combined with the evidence presented

26  during trial, is clear that the jurors found that a lack of mutual assent rendered the March 1999

27

28                                             - 10 -

1   Agreement between the parties void rather than voidable.  As this is a case where the contract

2   never existed, rather than a case where a legal fiction allows the parties to treat the contract as if

3   it never existed, the choice-of-law provision is unenforceable.[2]

4                          **2. Nevada Law and the Attorneys' Fees Provision**

5          Although Nevada routinely honors choice-of-law clauses, *Engel v. Ernst*, 724 P.2d 215,

6   218 (1986), in this case, there is no enforceable choice-of-law clause to honor as the contract was

7   never formed.  *See D'Angelo v. Gardner*, 819 P.2d 206, 232 (Nev. 1991) ("[C]ontracts are

8   created by mutual assent."); *Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955, 956 (Nev. 1978)

9   (stating that contracts require a meeting of the minds as to all essential elements); *Miller v.*

10  *Thompson*, 160 P. 775, 780 (Nev. 1916) (finding contract unenforceable where mistake led to

11  lack of mutual assent).

12         Where a choice-of-law clause is not binding on the parties, Nevada courts apply the

13  substantial relationship test.  *Sievers v. Diversified Mortgage Investors*, 603 P.2d 270, 273 (Nev.

14  1979).  Nevada courts look to the following contacts in determining which state's law applies: (a)

15  the place of contracting; (b) the place of negotiation of the contract, (c) the place of performance,

16  (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality,

17  place of incorporation and place of business of the parties.  *Sotikaris v. United Service Auto.*

18  *Ass'n*, 787 P.2d 788, 790 (Nev. 1990).  In the present case, nearly all the contacts militate toward

19  the application of Nevada law in this matter.  Only the residence of Defendants and the business

20  address of Defendants' attorneys favor the application of California law to this dispute.  Plaintiff

21  does not challenge this conclusion.  Therefore, given that the contract is void in its entirety,

22  _____

23         [2] As a result of this finding, the section of the court's March 3, 2006, Order, dealing with the choice-
    of-law provision appears to have been wrongfully decided due to a mistake of law.  As a result, the amount
24  of prejudgment interest would likely be calculated according to Nevada, not California, law.  Therefore, the
    court will *sua sponte* reconsider that order under Rule 60.  *See Kingvision Pay-Per-View Ltd. v. Lake Alice*
25  *Bar*, 168 F.3d 347, 351-52 (9th Cir. 1999) (holding that a district court may *sua sponte* reconsider a previous
    order under Federal Rule of Civil Procedure 60).  The court will provide the parties an opportunity to brief
26  the issue.  Plaintiff may file any objections it has within twenty (20) days of this order.  Defendant will then
    have the opportunity to file an opposition within fifteen (15) days of Plaintiff's objections, followed by a
27  reply by Plaintiff within the succeeding seven (7) days.

28                                              - 11 -

1    Nevada law applies to determining whether attorneys' fees should be granted in this case.

2          Both parties rely on *Mackintosh v. California Federal Sav. & Loan Ass'n*, 935 P.2d 1154

3    (Nev. 1997) as support for their respective positions regarding attorneys' fees.  Plaintiff argues

4    that Nevada law, as explained in *Mackintosh*, supports Plaintiff's recovery of attorneys' fees.

5    The parties in *Mackintosh* had an agreement stating that in the event of "legal action . . . arising

6    out the execution of this agreement or sale," the prevailing party could recover its attorneys' fees.

7    The district court rescinded the contract at the behest of the purchaser.  According to the

8    Supreme Court:

9            The district court refused to award attorneys' fees, stating that the rescinded
     contract was void from its date of inception, just as if the contract had never
10   existed.  *Bergstrom v. Estate of DeVoe*, 109 Nev. 575, 854 P.2d 860 (1993).  As
     rescission has been granted in this case, the contract is null and void.  Therefore,
11   Plaintiffs may not recover attorneys['] fees under the terms of a void contract.

12   *Id*. at 1162.  The Nevada Supreme Court reversed.  The problem in *Bergstrom*, the Court held,

13   was not that the contract was void, but that the plaintiff should not be able to rescind the contract

14   and also recover damages based upon it.  Holding the contract void did not decide "the issue of

15   whether an award of attorneys' fees authorized by the contract would be permissible if the

16   contract had been rescinded." *Id*.  Relying on and quoting *Katz v. Van Der Noord*, 546 So.2d

17   1047, 1049 (Fla. 1989), the Court held that "when parties enter into a contract and litigation later

18   ensues over that contract, attorneys' fees may be recovered under a prevailing-party attorneys'

19   fee provision contained therein even though the contract is rescinded or held to be

20   unenforceable." *Id.* at 1049.

21         At first blush, *Mackintosh* seems to support the idea that attorneys' fees are recoverable

22   under an attorneys' fees provision even where the contract is "void."  However, it is clear that the

23   contract before the Court was not void in the sense that it never existed.  Rather, the contract was

24   actually rescindable or voidable.  Again, relying on *Katz*, the Court quoted:

25           The legal fictions which accompany a judgment of rescission do not change the
     fact that a contract did exist.  It would appear unjust to preclude the prevailing
26   party to the dispute over the contract which led to its rescission from recovering
     the very attorney's fees which were contemplated by that contract.
27

28

1    *Mackintosh*, 935 P.2d at 1162 (quoting *Katz*, 546 So.2d at 1049).  From this quote, it becomes

2    clear that the Nevada Supreme Court recognized that the contract dispute before it was one in

3    which the contract did exist, but was voidable.  The contract was not void in the sense that it was

4    never formed, as is the situation in the case at bar.

5          Indeed, it appears that the Nevada Supreme Court has not addressed the issue of whether

6    an attorneys' fees provision may be enforced where the contract was never formed because of

7    lack of mutual assent.  In the absence of controlling precedent from the Nevada Supreme Court,

8    this court must use its own best judgment to predict how the state court would decide the relevant

9    substantive issues.  *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986), *reh'g*

10   *denied, modified*, 810 F.2d 1517 (9th Cir. 1987); *Takahashi v. Loomis Armored Car Service*, 625

11   F.2d 314, 316 (9th Cir. 1980); *Associated Aviation Underwriters, Inc. v. Vegas Jet, L.L.C.*, 106

12   F.Supp.2d 1051, 1053 (D.Nev. 2000).  "In doing so, this Court may look to state court decisions

13   from sister jurisdictions, treatises and other helpful resources." *Vegas Jet*, 106 F.Supp.2d at

14   1053.

15         Upon review, it appears the Nevada Supreme Court would adopt the view that an

16   attorneys' fees provision is not enforceable where the contract was never formed as a result of

17   lack of mutual assent.  The court has already noted that Nevada law supports the basic contract

18   principle that no contract exists (or ever existed) where the parties do not mutually assent to the

19   same material terms.  *See D'Angelo v. Gardner*, 819 P.2d 206, 232 (Nev. 1991) ("[C]ontracts are

20   created by mutual assent."); *Keddie v. Beneficial Ins., Inc.*, 580 P.2d 955, 956 (Nev. 1978)

21   (stating that contracts require a meeting of the minds as to all essential elements); *Miller v.*

22   *Thompson*, 160 P. 775, 780 (Nev. 1916) (finding contract unenforceable where mistake led to

23   lack of mutual assent).

24         As Defendants point out, the very case upon which the Nevada Supreme Court relied in

25   *Mackintosh* recognizes and supports the distinction between void and voidable contracts.  There,

26   the Florida Supreme Court stated:

27

28                                        - 13 -

> The legal fictions which accompany a judgment of rescission do not change the fact that a contract did exist.  It would be unjust to preclude the prevailing party to the dispute over the contract which led to its rescission from recovering the very attorney's fees which were contemplated by that contract.  This analysis does no violence to our recent opinion in *Gibson v. Courtois*[, 539 So.2d 459 (Fla. 1989),] *in which we held that the prevailing party is not entitled to collect attorney's fees under a provision in the document which would have formed the contract where the court finds that the contract never existed.*

*Katz*, 546 So.2d at 1049 (emphasis added).  Although Plaintiff attacks Defendants for "taking passages from *Katz* . . . on which the *Mackintosh* court did not even rely in its decision," (Pl.'s Reply (#448) at 14,) it is entirely reasonable to conclude that whereas the Nevada Supreme Court relied wholly on *Katz* in the past, it would continue to do so in the future.[3]  Clearly, the reason the Nevada Supreme Court did not include the last sentence from the above-quote is that the issue of lack of formation was not actually before them.  Therefore, the court concludes that if the Nevada Supreme Court was faced with the issue of whether a party may enforce an attorneys' fees provision in a contract that was never formed, the Court would follow the rationale of *Katz* and decide that such fees are not recoverable.  Consequently, Plaintiff is not entitled to recover its attorneys' fees arising from the litigation in this case.

### 3.  Plaintiff not Estopped from Claiming that California Law Applies

Defendants allege that Plaintiff should be judicially estopped from arguing that Calfornia law applies to this case as Plaintiff previously argued that Nevada law should apply.  As an alternative theory, Plaintiff previously argued that Nevada law should apply in its opposition to the Armstrong firm's claims for attorneys' fees (#101).   However, the court never reached the issue of which law applied as it held that Armstrong was not the prevailing party.

 "[F]ederal law governs the application of judicial estoppel in federal court."  *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996).  Under federal law, the

---

[3] Plaintiff's claim that Defendants need to show that Nevada has a strong policy against recovery of fees in order to defeat the California choice-of-law clause is misplaced.  The court has already found that the choice-of-law provision is inapplicable because the contract was never formed.  It would be nonsensical to therefore require Defendants to show that Nevada has a strong policy against the choice-of-law clause where such clause is otherwise unenforceable.

doctrine of judicial estoppel only applies to a party "where the court relied on , or 'accepted,' the party's previous inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).  As the court did not accept Plaintiff's previous position, judicial estoppel is not warranted in this case.

### 4. Non-Taxable Costs

In addition to attorneys' fees, Plaintiff seeks an award of $174,266.58 in non-taxable costs.  The court has ruled that the attorneys' fees provisions found in the March 1999 Agreement are not enforceable.  As a result, the non-taxable costs sought by Plaintiff, which are based on those same provisions, are not recoverable.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses . . . federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.")

### **II. BILL OF COSTS**

Plaintiff requests $90,773.63 in taxable costs as the prevailing party in this action in their Bill of Costs (#433).  Defendants have filed objections (# 439).  Plaintiff has not filed a responsive pleading.

The taxation of costs is governed by 28 U.S.C. § 1920, which reads:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in this case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

- 15 -

## A.  TRIAL AND HEARING TRANSCRIPTS

Defendants object to $7,420.64 in costs requested by Plaintiff associated with obtaining "Real Time" and daily transcripts from the trial.  (*See* Bill of Costs (# 433) at Tab 3.)  Plaintiff has failed to show how such daily trial transcripts were "necessarily obtained for use in this case."  28 U.S.C. § 1920(2).  Furthermore, Local Rule 54-3 states that the costs of trial transcripts are generally *not* taxable costs:

> Transcripts of pretrial, trial, and post-trial proceedings are not taxable unless either requested by the court or prepared pursuant to stipulation approved by the court.  Mere acceptance by the court does not constitute a request.  Copies of transcripts for counsel's own use are not taxable absent prior special order of the court.

Local Rule 54-3.  Daily trial transcripts were not requested by the court, nor were they prepared pursuant to stipulation approved by the court.  For this reason, these costs, in the amount of $7,420.64 are not taxable against Defendants.

Similarly, in accordance with Local Rule 54-3, Plaintiff's request for $391.30 in costs relating to the audiotape of argument before the Ninth Circuit is also disallowed.

## B.  DEPOSITION TRANSCRIPTS *AND* VIDEOTAPES/DVDS

Plaintiff also seeks its costs to obtain both the stenographic transcript and videotape/DVD for the following depositions:

- Barry Tyerman (video fee of $1022.00);
- Annie Challis (video fee of $827.00);
- Richard Vitali and Craig Hudson, taken by Defendants (video fee of $483.75);
- Cary Rehm, taken by Defendants (video fee of $168.25);
- Mark Tratos, taken by Defendants (video fee of $490.75);
- Scott Bogatz and Joel Fischman, taken by Defendants (video fee of $652.00);
- Gary Loveman, taken by Defendants (video fee of $329.50);
- Shawn Nasseri, M.D. (video fee of $1682.00)
- Barry Baron, M.D. taken by Defendants (video fee of $199.50); and
- John Lipkowitz, taken by Defendants (video fee of $168.25).

(Bill of Costs (#433), Tab 3.)

Defendants argue that these costs should not be taxed to them as none of the above depositions were used at trial.  Although the Ninth Circuit seems to be silent on the issue of taxability of video depositions in addition to the taxation of transcriptions, most courts agree that

1   the costs associated with video depositions are taxable as long as they are "necessarily obtained

2   for use in the case." 28 U.S.C. § 1920(2); 10 Wright, Miller & Kane, *Federal Practice and*

3   *Procedure* § 2676 (3d ed. 1998); *see also*, *Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471,

4   1478 (10th Cir. 1997) (holding that both the video and the written transcript may be taxed where

5   they are both "necessarily obtained for use in the case."); *Nicolaus v. West Side Transport, Inc.*,

6   185 F.R.D. 608, 612 n.2 (D.Nev. 1999) ("[T]he costs of videotaping and transcribing a

7   deposition are taxable.").  It also appears that some of the contested video depositions were

8   conducted with witnesses who were either beyond or may have been beyond the subpoena power

9   of the court at the time of trial.  Under the circumstances, the court is satisfied that the video

10  depositions were "necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  Consequently,

11  the $6,023.00 for the videotapes/DVDs will be taxed to Defendants.

12              **C. VIDEO EQUIPMENT RENTAL AND TECHNICAL SERVICES AT TRIAL**

13          In Tab 3 Plaintiff also seeks $8,575 in costs associated with "synchronizing transcripts to

14  videos" (in the amount of $1,900.00), for "video equipment rental and technical services" (in the

15  amount of $6,360.00) and "video editing of McGhee testimony for use at trial" (in the amount of

16  $315.00).  Similarly, under Tab 9, Rio also seeks $17,325.00 in costs fo the "trial support" and

17  computer services of "Geeks Plus."  The invoices for Geeks Plus generally reflect fees for this

18  company to deal with its equipment at trial, to compile and prepare a "medical timeline" not

19  admitted into evidence (*see* # 399), and "trial support" work.

20          The court is unaware of any authority which would allow these costs for various technical

21  services to be taxed against Defendants.  They do not appear to fall under any of the categories

22  listed in 28 U.S.C. § 1920, and Plaintiff has not offered any legal support for their inclusion.  *See*

23  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987) (stating that taxable

24  costs limited to those enumerated in 28 U.S.C. § 1920).  Plaintiff attempts to shoehorn many of

25  these litigation expenses into the ambit of Local Rule 54-7, which provides:

26          The cost of maps and charts is taxable if they are admitted into evidence.  The cost
            of photographs, 8" x 10" in size or less, is taxable if admitted into evidence or

27

28                                          - 17 -

1
2

> attached to documents required to be filed and served on opposing counsel.  The
> cost of enlargements greater than 8" x 10", models, summaries, computations, and
> statistical comparisons is not taxable except by prior order of the court.

3   Local Rule 54-7.  The costs for technical services and trial support services are not included in

4   the costs allowed under Local Rule 54-7.  From the descriptions provided by Plaintiff, the court

5   is unable to determine whether any of the services listed included any of the items listed as

6   taxable under 54-7.  Therefore, these costs, totaling $25,900 are not taxable.

7   ### D.  TRAVEL-RELATED EXPENSES FOR DR. BARON

8        Plaintiff seeks $961.40 in expenses (airfare, lodging, meals, cab fare, and parking)

9   associated with its medical expert's travel from San Francisco to Las Vegas to testify at trial,

10  despite the fact Dr. Baron never testified.  Local Rule 54-5(a) provides:

11
12

> The rate for witness fees, mileage, and subsistence are fixed by statute (see 28
> U.S.C. § 1821).  Such fees are taxable even though the witness did not testify if its
> shown that the attendance was necessary, but if a witness is not used, the
> presumption is that the attendance was unnecessary.

13
14  Local Rule 54-5(a).  Defendants argue that Plaintiff has not rebutted the presumption that the

15  attendance of Dr. Baron was unnecessary.  However, Plaintiff addressed this issue in its Motion

16  for Attorneys' Fees (#436) and its subsequent Reply (#448).  Dr. Baron's fees were unavoidable

17  because the decision not to call him to testify was not one that Rio could have made prior to

18  having him stand by, ready to testify at trial.  Plaintiff sought to re-open the case when the court

19  ruled that its medical evidence chart was inadmissible; and, if the court had allowed Plaintiff to

20  re-open the case, Plaintiff would have sought to call Dr. Baron to the stand.  Therefore, the fees

21  attributed to Dr. Baron are rightfully taxed to Defendants.

22  ### E.  EXPERT EXPENSES AND TREATING PHYSICIAN DEPOSITION FEES (TAB 8)

23       Finally, Plaintiff seeks $15,300 in expenses associated with the discovery depositions

24  Plaintiff took of Defendants' experts and Rod Stewart's treating physicians.  These are not

25  taxable costs under 28 U.S.C. § 1821.  Local Rule 54-4 states that the "[f]ees for the witness at

26  the taking of a deposition are taxable at the same rate as for attendance at trial."  The amount is

27  fixed by 28 U.S.C. § 1821, which provides that *all* witnesses are entitled to a witness fee of $40

28

1  per day.  *See also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)

2  (holding that a court may tax expert witness fees in excess of the amount set in 28 U.S.C. § 1821

3  only when the witness is court-appointed).  As a result, these costs are disallowed.

4      In sum, Plaintiff is entitled to $41,761.69 in taxable costs.

5  **III. CONCLUSION**

6      As the jury found that there was no mutual assent with respect to refund/rescheduling

7  provisions of the parties' disputed contract, the contract was never formed, and the choice-of-law

8  and attorneys' fees provisions are unenforceable.

9      THEREFORE, Plaintiff's Motion for Attorneys' Fees and Costs (# 436) is DENIED.

10      FURTHERMORE, Plaintiff's Bill of Costs (# 433) is hereby reduced to allow Plaintiff to

11  recover $41,761.69 in taxable costs.

12      Plaintiff shall have twenty (20) days in which to challenge the reconsideration of the

13  court's March 3, 2006, Order, with respect to the determination of prejudgment interest.

14  Defendants will then have fifteen (15) days to file an opposition, and Plaintiff will then have

15  seven (7) days to file a reply.

16      IT IS SO ORDERED.

17      DATED this 8th day of September, 2006.

20  _____
21  LARRY R. HICKS
UNITED STATES DISTRICT JUDGE